THE STATE, CHARLES SIEDLER ET AL., PROSECUTORS, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON.

1. A resolution of a board of chosen freeholders directing the issue of county bonds, in excess of the appropriation and limit of expenditure as fixed by law, is rendered illegal by the supplement to the Crimes Act, approved February 7th, 1876.   *Pamph. Laws, p.* 16.
2. If the resolution for the issue of the bonds is one of several resolutions passed together, providing for the purchase of lands for which the bonds are the price, all the resolutions are tainted by the illegality, and will be set aside.
3. The fact that the deed for the lands has been delivered, and the bonds have been issued to the vendor, will not prevent the reversal of the resolutions, where the tax-payers who prosecute have been guilty of no laches in bringing their suit, and the lands appear to be undisturbed, and the bonds to be non-negotiable, and to show upon their face under what resolutions they were executed.
4. It is not necessary that the vendor should be brought in as a defendant to the *certiorari*, unless his title to the bonds, as well as the validity of the resolutions, be directly assailed.
5. The question of the mere legality of such a corporate act is peculiarly one for a court of law, not for a court of equity.

On *certiorari*.

Argued at June Term, 1877, before Justices SCUDDER, DIXON and REED.

For the prosecutors, *W. Brinkeroff* and *P. Bentley*.

For the defendants, *F. McGee* and *J. H. Lippincott*.

The opinion of the court was delivered by

DIXON, J.   The *certiorari* in this case brings up for review the following preamble and resolutions passed by the board of chosen freeholders of Hudson county on December 14th, 1876:

## " COURT-HOUSE SITE.

" WHEREAS, remonstrances have been presented by property owners and citizens of this county, to this board, against the expenditure of any more money in repairing or making additions to the old court-house of this county, and suggesting that the relief demanded by the grand juries, and by the county officers and courts of the county shall be found in a new court-house ;

" AND WHEREAS, the said remonstrances, and the whole matter of the want of a new court-house in this county, with county offices and accommodations for grand juries, has been referred to a committee of this board, who have reported to this board that they find it true that the grand jury and witnesses have not proper accommodations; that the witnesses are obliged to stand in the hallway of the old court-house, where it is dark, cold and damp, awaiting their turn to be heard ; that the old building has not the necessary accommodations for the county offices, and that the room in which is held the Quarter Sessions is almost unendurable, and that it would cost a large sum of money to make additions to the old building, sufficient for the purposes of the county, and that even then a proper available space and light could not be obtained ;

" AND WHEREAS, the said committee also reported that it would be wise to provide suitable grounds upon which could be erected a new court-house, and that they have considered different locations, and have concluded that the property of Mr. Mahlon Crampton, at the corner of Newark and Palisade avenues, would be altogether the best for a site for a new court-house, being easy of access from all parts of the county, and very central; and that the amount of land required for a new court-house and public offices of this county, can be obtained cheap, and that portions of said land of Mr. Mahlon Crampton, at the corner of Newark and Palisade avenues, lying north of the southerly line of Waldo avenue, if the same were produced across the Crampton property, can be ob-

tained for the sum of $2000 for every twenty-five hundred square feet, and recommending the purchase thereof at that price; therefore, be it

"*Resolved,* That, after mature consideration, this board have come to the conclusion that further accommodations than are now possessed by the county, are necessary for the proper transaction of the public business, and the security and preservation of the public records of the county; that any attempt to enlarge or adapt the present court-house to meet the pressing wants of the county, would be a wasteful expenditure of public money; and that the time has fully arrived when the public necessities of the county of Hudson require the erection of a new court-house and offices for the preservation of the public records of the county, and proper and convenient offices for the sheriff, county clerk, register, surrogate and prosecutor of the pleas, and accommodations for the courts, the grand and petit juries and witnesses, and meetings and business of the board of chosen freeholders and of the board of vital statistics; and that the county of Hudson does not, at the present time, own any sufficient quantity of land upon which to erect any such new court-house offices, and that it is the duty of this board, at this time, to procure such land as may be needed for such purposes.

"*Resolved,* That the property of Mr. Mahlon B. Crampton, as stated and set forth in the report of the committee in this matter, is the best and most convenient location, and that the price for which the same is offered by said Mahlon B. Crampton is, in the judgment of this board, very cheap.

"*Resolved,* That, in the judgment of this board, so much of the lands offered by said Crampton as are needed for the use and convenience of the county for a site on which to erect a new court-house, and rooms and offices for the safe keeping and preservation of the public records, and for the convenience of the public, and accommodation of the courts and juries and witnesses attending upon the same, and for the meetings of the grand jury and witnesses requested or desiring

to attend upon the same, and for the sheriff, county clerk and prosecuting attorney, the surrogate, register, and meetings and business of the board of freeholders, and of the board of health, as lies north of the southerly line of Waldo avenue, if the same were produced across said property, as shown on a map of said property, furnished to and now in possession of this board.

"And that the same is hereby taken and purchased at the price of $2000 for every twenty-five hundred square feet thereof; and that in payment for said lands, there be issued to said Crampton a bond or bonds of the county of Hudson, payable out of the amount appropriated and limited for the expense of the next fiscal year; said bonds to run one year from the date thereof, and bearing interest at the rate of seven per cent. per annum.

"*Resolved,* That the counsel to the board be authorized to examine the title of said Crampton to the land at the corner of Newark and Palisade avenues, Jersey City, as above set forth and shown on a map now in the possession of this board and if the same be satisfactory, that he ascertain the number of square feet contained in that portion of said lands lying north of the southerly line of Waldo avenue, if the same were produced across said property, and report the same to the county collector, who shall, provided said Crampton shall notify the county clerk of his acceptance of the terms contained in these resolutions, prepare said bond or bonds, in amounts equal to the amount of said lands purchased and taken, at the rate of $2000 for every twenty-five hundred square feet thereof.

"And the director-at-large and county collector are hereby authorized and directed to sign said bond or bonds, and affix the seal of the county thereto.

"And whenever the said Crampton shall furnish the county collector a good and sufficient deed, vesting the title to said lands in the board of chosen freeholders of the county of Hudson, approved by the counsel of this board, the county

collector shall deliver such bond or bonds to said Crampton, in full payment for said lands."

It has already been decided by this court, that the adoption and carrying out of these resolutions, so far as they directed the issuing of bonds, constituted a malfeasance in office on the part of the members who voted for them, according to the act of February 7th, 1876, (*Pamph. Laws, p.* 16.) *State* v. *Halsted, ante p.* 402.

The passage and execution of these resolutions, in this important particular, having thus been determined to have been criminal, very cogent reasons ought to appear to induce the court to refrain from adjudging the resolutions themselves illegal and void.

Among the reasons urged, the first that I will consider is, that there is nothing in the statute of February 7th, 1876, which forbids the *board's* incurring the obligations mentioned in the resolutions; that it confines itself entirely to making the acts of the *individual members* criminal; that because, by that statute, the incurring of the obligations was a misdemeanor, it must follow that the obligations—that is, legal obligations—were incurred, for, if no obligation, then no crime.

This view of the statute is bold, and, perhaps, specious. As a reason, however, it is a little aside from the exact point now before the court. The question at present is, not whether the obligations exist, but whether these resolutions are lawful; and that question is to be answered by a consideration of their legality at the time of their passage. By the decision already referred to, it is settled that the votes cast in favor of the resolution ordering the issue of bonds, were a step taken in the commission of a misdemeanor, and that, not because of any motive actuating the voters, or any impropriety of method in their procedure, but solely because they voted for the adoption of that resolution. And not only were the votes forbidden, but it is equally evident that the resolution itself wrought the accomplishment of an end which the statute was.

designed to prohibit, and no other. In *State, Gregory, pros.*, v. *Jersey City*, 5 *Vroom* 390, it was held to be clear ground for declaring a resolution for the purchase of land invalid, that two of the aldermen voting for it were interested in the purchase, in violation of law. The purchase was regarded as opposed to the general policy of the statute which forbade the officer to be interested; and, therefore, the resolution itself was unlawful. The objections in the present case are much stronger than that. There, the statutory prohibition was against a collateral fact—the interest of the voters; here, it is aimed directly at the vote itself, and constitutes that act a crime. The immediate result of that criminal act must be illegal. I can conceive of no circumstances which would more clearly establish the unlawfulness of a resolution than these—that to have voted for it is criminal, and to execute it is to defeat the plain intent of a penal statute.

But it is urged that, even if this portion of these resolutions is unlawful, that does not illegalize the whole—that the provision for purchasing the property may still stand; and we are referred to *Erie Railway Co.* v. *Union Locomotive and Express Co.*, 6 *Vroom* 240, as supporting this position. That case, however, is not applicable. The principle there maintained was, that when a man has agreed, for a good consideration, to do two acts, *which are entirely distinct*, and one of them is prohibited by law, and the other is legal and unobjectionable, he cannot set up the illegality of the one stipulation in bar of a suit for breach of the other. But the illegal direction now before us is not distinct from the rest of these resolves: it is inseparably connected therewith, the whole being intended to form one entire contract, so that, without it, the terms would constitute a bargain to which neither party has ever indicated assent. It cannot be known that the board would have consented to buy, or that the vendor would have consented to sell the lands described, for any other consideration than payment by these bonds. The present case rather comes within the rule, that if an essential part of a by-law or resolution he bad, the whole is bad—that, where

what is vicious is necessary for the completeness of that which otherwise might be lawful, all is tainted, and must be annulled. *Dillon on Mun. Corp.,* § 354, *notes* 3, 4; *State, Chamberlain, pros.,* v. *Hoboken,* 9 *Vroom* 110.

It is further insisted that these resolutions ought not to be set aside, because they have been executed by the delivery of the deed for the lands to the county, and of the bonds to the vendor, who is not a party in this cause. That this reason is true, in fact, is certainly not due to any dilatoriness on the part of the prosecutors: they seem to have done everything feasible to sue out the *certiorari* while yet matters were *in fieri.* But is the reason sufficient, in law, to stay the hand of this court? When the writ issued, the land remained as it was when the deed was delivered. The bonds are admitted to be still the property of the vendor. Upon their face, they are called "temporary loan bonds," and they are, two of them, for $75,000 each, and the third for $75,720; and they are made payable to Mahlon B. Crampton alone, in a little less than a year from their date. Such bonds are not negotiable securities. *Knapp* v. *Hoboken, ante p.* 394.

They declare, also, that they are executed and issued in pursuance of the resolutions now before us, and, therefore, every one into whose hands they have or may come, is chargeable with the legal character of their authorization. Under these circumstances, I do not think that this mere exchange of papers should bar the jurisdiction of the court in a function exclusively its own, and most important for the welfare of society. It may be, that in adjudging these resolutions illegal, we are declaring principles which, when applied to the vendor's bonds, will show them to be invalid; and it may be, that if his bonds are valueless, his lands ought to be restored, and only a court of equity can decree their restoration. But, because the collateral effect of our judgment will reach a person not before us, and in such manner that we cannot afford him the redress to which he may think himself entitled, we are not, therefore, to refrain from judgment. Our decision is not upon the validity of any claim which he

has made, but relates solely to the legality of these resolutions. It is more *in rem* than *inter partes*, for the affirmance or reversal of this corporate act. In such a cause, our jurisdiction is complete, when we have brought the subject matter within our power, by a writ that has given the corporation notice of our purpose, and does not need that we should also have before us those who have acquired or attempted to acquire rights on the basis of the action under review. It is discretionary, not jurisdictional, with the court, whether such parties shall be summoned and heard before judgment is pronounced. The rule would be otherwise if, not the corporate act alone, but the title derived from it also, were directly assailed. *State, Evans, pros.*, v. *Jersey City et al.*, 6 *Vroom* 381.

Nor should these tax-payers of the county be remitted to the Court of Chancery without having obtained the judgment of this court upon this purely legal question. Such judgment might be deemed necessary to the foundation of relief in equity. That court generally refuses to interfere with corporate proceedings, on the mere ground of their illegality, in advance of the judgment of the common law tribunals. *Dusenbury* v. *Newark*, 10 *C. E. Green* 295.

These resolutions are also, I think, improper in another respect than the illegal feature already adverted to. They do not, either in themselves or by reference to anything extrinsic, describe the land intended to be purchased, with such accuracy as to define it. The descriptive words are, "so much of the lands offered by said Crampton as are needed for the use and convenience of the county, etc., as lies north of the southerly line of Waldo avenue, if the same were produced across said property, as shown on a map of said property, in possession of the board." This, it is said, was intended to embrace all of the property that lay north of the southerly line of Waldo avenue produced; but it seems to me that its natural signification would be, *so much* of what lay north *as was needed*. And it was very important that the board should determine just how much was necessary for

the purposes they had in view, and so determine it, that this court may see that they have clearly passed upon the question, for their judgment as to the necessity, gives a limit to their power. *State, Gregory, pros.,* v. *Jersey City,* 7 *Vroom* 166.

These resolutions should be set aside, with costs.